566 A.2d 1269

**Raymond BUCK, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1989.

Decided Dec. 1, 1989.

---

52

53

Stephen A. Feldman, Dershaw & Feldman, Philadelphia, for petitioner.

Mary Frances Grabowski, Asst. Counsel, Harrisburg, for respondent.

Before COLINS and SMITH, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Raymond Buck (Petitioner) seeks review of the final order of the Secretary of the Department of Public Welfare (DPW) which granted in part and denied in part Petitioner's request for reconsideration of the amended order issued by the Acting Director of DPW's Office of Hearings and Appeals. The Secretary reversed the Acting Director's disallowance of a spousal deduction, but affirmed the Acting Director's determination that Petitioner's entire pension was available to pay for his nursing home care.

Issues presented for review are whether DPW erroneously determined ownership of Petitioner's pension; whether DPW violated Title XIX of the Social Security Act (Title XIX), 42 U.S.C. §§ 1396–1396p; and whether DPW violated federal and state constitutional rights to privacy, due process and equal protection. The final order of the Secretary of DPW is affirmed.

Petitioner entered a nursing home in 1985 and, on April 22, 1987, his wife filed an application for medical assistance nursing home care benefits with the Philadelphia County Assistance Office (CAO) on his behalf. The CAO determined that Petitioner was eligible for medically needy medical assistance nursing home care benefits, effective May 1, 1987. After its initial authorization of assistance, however, the CAO discovered that it had miscalculated the amount of Petitioner's income available to meet the cost of his nursing home care. The CAO notified Petitioner of its intention to increase his patient pay amount[1] since it had considered only one-half, rather than all, of Petitioner's pension. In response to the CAO's proposed action, Petitioner initiated and exhausted administrative appeal proceedings and now seeks review by this Court.[2]

We initially note that the medical assistance program is a federal-state program established by Title XIX. States electing to participate in this program receive federal financial assistance for certain medical services rendered to needy individuals, provided that the states comply with Title XIX and all implementing federal regulations. *See* 42 U.S.C. § 1396b(a); *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). A participating state that elects to provide medical assistance to the medically needy is required to formulate reasonable standards for determining eligibility for, and the extent of, medical assistance. These standards must take into account only the income and resources available to the medically needy medical assistance applicant or recipient and provide for reasonable evaluation of any such income and resources. *See* 42 U.S.C. § 1396a(a)(17).

---

**1.** The patient pay amount is the amount Petitioner is expected to contribute toward his nursing home care.

**2.** This Court's scope of review of a final order of DPW is limited to determining whether it was supported by substantial evidence, an error of law was committed, or constitutional rights were violated. *Mulgrew v. Department of Public Welfare*, 125 Pa. Commonwealth Ct. 449, 452 n. 3, 557 A.2d 1160, 1162 n. 3 (1989).

Federal regulations promulgated to implement Title XIX require medically needy applicants and recipients to take all necessary steps to acquire, *inter alia,* any pension or other retirement benefits to which they are entitled unless they can show good cause for not doing so. *See* 42 C.F.R. § 435.603. Once eligibility for medical assistance is determined, federal regulations direct that the state must reduce its payment to the medical institution or intermediate care facility rendering services to the medically needy by the amount that remains from the medically needy individual's total available income after making applicable deductions, including a deduction for the maintenance needs of the medically needy individual's noninstitutionalized spouse. *See* 42 C.F.R. § 435.832.

Section 5 of the Public Welfare Code, 62 P.S. § 442.1(2)[3], authorizes DPW to establish standards of financial eligibility for the medically needy. Eligibility standards for the medically needy who are in skilled and intermediate nursing care facilities are set forth at 55 Pa.Code § 177.83(b) which provides in pertinent part that:

(b) Exemption of resources will comply with the following:

. . . .

(2) For the purpose of determining eligibility for persons receiving institutional care all resources available to meet the cost of institutional care except:

. . . .

(ii) An amount necessary to maintain a spouse at an income level equal to the current SSI [supplementary security income] Federal–State payment level . . .

DPW regulations at 55 Pa.Code § 177.23(a) and (b) further direct that:

(a) Only resources which are legally available, . . . to the client are applied toward the resource limitation.

. . . .

---

3. Act of June 13, 1967, P.L. 31, *as amended,* added by the Act of July 31, 1968, P.L. 904, *as amended.*

(b) Real and personal property can have more than one owner. Establishing the type of ownership is essential in determining ... availability ...

(1) The following rebuttable presumptions apply in determining the availability of real and personal property resources:

(i) If a budget group member is the sole owner, assume that the resource is available.

Available means that a client has both ownership interest and the right to use or dispose of his interest. *See* 55 Pa.Code § 177.2.

 Petitioner first asserts that DPW erroneously considered his entire pension available to him for purposes of computing his patient pay amount by failing to recognize his wife's ownership interest in his pension. In support, Petitioner correctly notes that applicable federal and state medical assistance statutes and regulations do not establish specific criteria for determining ownership of income. Petitioner claims that DPW's "name-on-the-instrument" rule [4] (rule) thus has no statutory or regulatory support. He submits that ownership of his pension is more appropriately ascertained by application of state marital property law which would support his wife's property interest in his pension so as to make a portion thereof unavailable to him, thereby reducing his patient pay amount.

Petitioner's reliance upon state marital property law in the context of medical assistance is misplaced. As noted by DPW, the fact that Petitioner's pension is considered marital property subject to equitable distribution upon divorce in Pennsylvania [5] does not provide Petitioner's wife with a

---

4. This rule is applied by DPW to determine ownership of income. Here, DPW found that Petitioner's entire pension was available to him to defray his nursing home care costs since Petitioner was the only named payee on his pension checks and was not acting in a fiduciary or representative capacity. Presumably, this rule could also be applied to other instruments, such as deeds.

5. *See,* e.g., *King v. King,* 332 Pa. Superior Ct. 526, 481 A.2d 913 (1984).

present ownership interest in his pension during marriage.[6]

In ascertaining ownership of Petitioner's pension, DPW looked to all of the evidence before it; namely, the application for medical assistance submitted on Petitioner's behalf, which listed Petitioner's entire pension as his income only, and the pension checks, which named only Petitioner as payee. As to the latter, DPW maintains that application of its rule was a valid means to determine ownership of Petitioner's pension for medical assistance purposes since it is entirely reasonable to assume that the named payee of a check is the person entitled to receive and control the use of the income represented thereby unless acting in a fiduciary or representative capacity.

Pursuant to statutory law governing commercial paper, a special indorsement on a check, as here, specifies the person to whom the check is payable. Section 3204(a) of the Uniform Commercial Code (UCC), 13 Pa. C.S. § 3204(a). Here, that person was Petitioner. Quite clearly, Section 3204(a) of the UCC supports DPW's reliance upon its rule and provides validity for the rule itself as a means to determine ownership of Petitioner's pension.

We find additional support for the validity of DPW's rule in the recently enacted Medicare Catastrophic Coverage Act of 1988 (Act) which amended portions of Title XIX, effective September 30, 1989. Congressional endorsement of the rule is reflected in Title III of the Act at Section 303(a)(1)(B), 42 U.S.C. § 1396r–5(b)(2). Therein, payment of

---

**6.** In addition to requesting that the ownership interest in his pension be ascertained by application of state marital property law, Petitioner cites provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, and the Retirement Equity Act of 1984 (REA), 26 U.S.C. §§ 72, 401–02, 410–11, 414–15, 417, 2503, 6057, 6652 and 29 U.S.C. §§ 1001 note, 1025, 1052–56, 1144, in support of his position that he and his wife are joint owners of his pension. However, we are unable to definitively determine whether ERISA applies because the only evidence of record suggesting that it may apply is sketchy. *See* N.T., p.9. Even if it is applicable, it would appear that, at the time of his retirement, Petitioner and his wife were provided several options for withdrawing his pension benefits and elected to name only Petitioner as payee. *See* N.T., p. 9. Moreover, the provisions of REA are inapplicable given the fact that Petitioner began receiving his pension benefits in 1975. *See* N.T., p. 9.

income made solely in the name of the institutionalized spouse is considered available only to that spouse unless he or she can establish, by a preponderance of the evidence, that the ownership interests in the income are otherwise.

Accordingly, we find that DPW neither erred, nor acted arbitrarily without statutory support, in applying its rule to determine ownership of Petitioner's pension. We further find that DPW established *prima facie* that Petitioner's entire pension was a resource available to him. The burden then shifted to Petitioner, who, we find, failed to establish that the ownership interest in his pension was other than as determined by DPW.[7]

■ Petitioner's additional assertions that DPW's rule impermissibly infringes upon federal and state constitutional rights to privacy, equal protection and due process are likewise without merit. Petitioner initially claims that DPW's rule interferes with the privacy of married couples without compelling basis. Petitioner's privacy challenge is two-fold: first, he maintains that application of the rule conflicts with economic reality where, as here, the nonwage-earning, non-institutionalized spouse is left with insufficient family income; and second, that application of the rule encourages spouses to sue for divorce to maintain certain property interests. In support, Petitioner cites *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) and *Griswold v. State of Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

---

**7.** Our resolution of the issue of ownership is dispositive of Petitioner's further assertion that DPW violated Title XIX's directives to reasonably evaluate his income and consider only the income available to him in computing his patient pay amount. We note in passing, however, that, contrary to Petitioner's contention, DPW's rule does not conflict with his legal and moral duty to support his wife given the spousal deduction taken from his total income prior to computation of his patient pay amount. Admittedly, this is a shamefully meager amount upon which to expect our much revered senior citizens to live. This, nonetheless, is a tragedy for the legislature to tackle and not this Court. We hasten to add, however, that, despite any short-comings of the medical assistance program, without it, Petitioner and his wife would be forced to shoulder the entire cost of his nursing home care.

In *Griswold*, the United States Supreme Court recognized a right of marital privacy in striking down a state law prohibiting use of contraceptives as an unconstitutional intrusion upon the right of marital privacy since it impermissibly interfered with the intimate privacy surrounding the marriage relationship. Again, in *Moore*, the United States Supreme Court found a housing ordinance to be constitutionally infirm because it sliced deeply into the family itself. The ordinance, on its face, prohibited certain categories of relatives from residing together. It thus constituted a direct intrusion upon choices concerning family living arrangements rather than an intrusion created as a mere incidental result of the ordinance.

Unlike the state law and city ordinance in *Griswold* and *Moore*, DPW's rule, on its face, does not prohibit constitutionally protected choices, nor does it compel, or in any way restrict, by force of law, certain marital and family choices. Despite our sympathy for Petitioner's position, we must find, in accordance with established precedent, that any insufficiency in income and resort to the drastic measure of divorce are incidental results of the rule rather than direct intrusions upon marital choices. Accordingly, we conclude that application of the rule does not amount to an infringement of a right to marital privacy. *See Tiani v. Department of Public Welfare*, 86 Pa. Commonwealth Ct. 640, 486 A.2d 1016 (1985). *See also generally Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981).

■ Petitioner next asserts that DPW's rule results in unequal treatment. Petitioner claims that the instant circumstances almost always arise in the older population where the wife is the nonwage-earning spouse and that the rule allows the husband, as wage-earning spouse, to enjoy the fruits of his lifetime employment upon the wife's institutionalization while depriving the wife thereof upon the husband's institutionalization.[8] Inasmuch as DPW's rule is

8. Had Petitioner included his wife as joint payee on his pension checks, she would not have been so deprived by application of DPW's rule.

gender-neutral on its face, it appears that Petitioner's contention concerns alleged disparate impact upon a class of women which results when the rule is applied and not that the rule, on its face, employs gender as a classification basis for purposes of determining ownership of income.

Because Petitioner is challenging a facially neutral rule on the ground that its effects upon a class of women are disproportionately adverse, it is incumbent upon him, as challenger, to establish that DPW elected to use the rule, at least in part, because of, not merely in spite of, its adverse effects upon an identifiable group. *See Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). Mere inequalities in the administration of medical assistance do not give rise to a constitutional infringement absent an element of intentional or purposeful discrimination on the basis of an arbitrary classification. *See Barsky v. Department of Public Welfare*, 76 Pa. Commonwealth Ct. 417, 464 A.2d 590 (1983), *aff'd*, 504 Pa. 508, 475 A.2d 742 (1984). As Petitioner neither presented evidence to support such a finding of intent, nor did he even allege such intent, we find that he failed to sustain his burden of proof.

■ Petitioner's final constitutional contention charges that DPW's rule arbitrarily assigns family income between spouses by employing an irrebuttable presumption that his entire pension is actually available to him. Petitioner claims that use of this irrebuttable presumption violates due process principles.

The doctrine of irrebuttable presumption stands for the proposition that an irrebuttable presumption denies due process of law "if it is not necessarily true, in fact, that the basic fact implies the presumed fact." *Brown v. Heckler*, 589 F.Supp. 985, 994 (E.D.Pa.1984) (quoting *Malmed v. Thornburgh*, 621 F.2d 565, 573–74 (3rd Cir.), *cert. denied*, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980)). This "doctrine is but another way of stating that a presumed fact must be based on reason, and that if a plaintiff demonstrates that the inference is not 'rationally related' to a legitimate legislative classification, the inference will not

pass constitutional muster." *Id.*[9] In the context of the instant case, DPW is presuming that a named payee of a check has ownership over the income represented thereby since he or she is the person entitled to receive and control the use of the income unless acting in a fiduciary or representative capacity.

As intimated by Petitioner, it would be preferable if medical assistance was tailored to individual needs determined on the basis of individual evaluations. Such individualized factfinding procedures, however, are neither feasible nor constitutionally mandated. *See Brown.* Inasmuch as the purpose of medical assistance is designed, *inter alia,* to defray the cost of medical care for the needy out of the public treasury, it is clearly rational for DPW to apply its rule in attributing income between spouses so as to avoid dissipating limited resources, time and personnel on costly factfinding procedures. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981) (Administration of welfare benefits based on the use of a formula is not inherently arbitrary given the limited nature of such resources). Additionally, as previously noted, DPW's rule has state and federal statutory support and is thus based on reason. Accordingly, we conclude that DPW's rule does not employ an impermissible irrebuttable presumption which operates to deny Petitioner due process of law.[10]

Having found no error of law committed nor any violation of constitutional rights, the final order of the Secretary of DPW is affirmed.

COLINS, J., dissents.

**9.** We note that irrebuttable presumptions in violation of due process have doubtful vitality in cases where eligibility determinations for social welfare benefits are involved. *Brown.* Because the instant case concerns comparable determinations in the context of public medical assistance benefits, such presumptions are likewise of doubtful applicability here.

**10.** Petitioner also argues that DPW's use of an irrebuttable presumption conflicts with its own regulations which provide for a rebuttable presumption. Simply because Petitioner was unable to rebut the presumption does not make the presumption irrebuttable as to all medical assistance applicants.

## ORDER

AND NOW, this 1st day of December, 1989, the final order of the Secretary of the Department of Public Welfare is affirmed.