Carrie SWARTZ, Petitioner,

v.

PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 6, 1997.

Decided June 24, 1997.

Alan M. Cashman, Hanover, for petitioner.

Andrew A. Coates, Philadelphia, for respondent.

Before SMITH and KELLEY, JJ., and SILVESTRI, Senior Judge.

KELLEY, Judge.

Carrie Swartz (Swartz) appeals from a final order on the merits entered by the Secretary of the Department of Public Welfare (DPW) on October 10, 1996. The final order on the merits affirmed the March 15, 1996 final administrative action order entered by the DPW, Office of Hearings and Appeals,

denying Swartz's request for medical assistance (MA) benefits. We affirm.

Swartz's husband, Robert F. Swartz, was consecutively hospitalized at three separate hospitals from February 14, 1995 until he passed away on May 18, 1995. The bills for her husband's medical treatment exceeded $350,000. Hershey Medical Center (hospital) filed the initial application with the DPW on April 24, 1995 for MA benefits to cover his hospitalization. Based on this application, the York County Assistance Office (CAO) found Swartz to have excess resources worth $133,611. After Mr. Swartz's death, a second application was submitted by the hospital for retroactive MA. Both applications were rejected due to excess resources and no appeal was taken therefrom.

On June 23, 1995, Swartz submitted a new application requesting retroactive MA for her husband. CAO advised Swartz that her excess resources would have to be spent on medical bills and a deadline of July 21, 1995 was set for verification. On August 10, 1995, Swartz provided verification that $90,083 was spent, although $5,648 was spent on funeral and estate costs. By notice of August 18, 1995, the CAO advised Swartz that MA was denied because not all of the $90,083 was spent on medical expenses and excess resources of $43,528 ($133,611—90,083) far exceeded the prescribed limit of $3,200. Swartz filed a timely appeal and a fair hearing was held on November 15, 1995.

Before the Welfare Hearing Officer, Swartz testified that the following resources were not actually available to her:

| | |
|---|---|
| Tax due to early withdrawal and liquidation of tax deferred accounts | $27,000 |
| Difference between U.S. Savings Bonds resource of $7,846 and its actual value of $5,923 | 1,923 |
| Over estimation of IRAs | 2,385 |
| Hanover Bank IRA penalty for early withdrawal ($2018.00 × 20%) | 403 |
| TOTAL resources not available | $31,711 |

1. Swartz later asserted that the total value of these assets amounted to $5,150. However, this figure was not verified by documentation pursuant to 55 Pa.Code § 178.3(7).

2. This court's scope of review is limited to a determination of whether the adjudication by DPW is in accordance with the law, whether the

Swartz also identified a 1986 Thunderbird, 1979 International, a boat and a boat trailer as being unavailable.[1] These assets were up for sale, but had not been liquidated at the time of the verification.

The hearing officer, assuming *arguendo* that the entire $90,083 was spent on medical expenses, found that Swartz's remaining resources still exceeded the MA resource limit of $3,200 by $8,617 ($43,528—31,711—3,200). The hearing officer concluded that the CAO acted properly and denied Swartz's appeal.

Swartz appealed the order to the Office of Hearing and Appeals (OHA). On March 15, 1996, OHA issued a final administrative action order affirming the decision of the hearing officer and denying Swartz's appeal.

Swartz filed a timely petition for reconsideration which was granted on April 1, 1996. The petition reiterated that the vehicles, boat, and trailer were not available resources and offered to "spend-down" $8,617. On April 10, 1996, Swartz served documentary evidence upon the hearing officer indicating that the previous unavailable assets were now sold and that the $8,617 was spent on medical expenses. The matter was reconsidered by the Secretary of the DPW. On October 10, 1996, the Secretary of the DPW upheld the order entered by the OHA, without further comment. Swartz appealed to this court.[2]

In this appeal, Swartz raises the following issues:

• Whether DPW violated Swartz's constitutional rights of due process, reasonable opportunity to be heard, and rudiments of fair play as well as agency practice and procedure in the adjudication of her MA application;

• Whether the resource verification method used by DPW was in accordance with the law and regulations;

findings of fact are supported by substantial evidence, and whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Harston Hall Nursing & Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa.Cmwlth. 475, 513 A.2d 1097 (1986).

• Whether DPW's failure to redetermine Swartz's resources was in accordance with the law and regulations; and

• Whether the hearing officer's conclusion of law that there is no resource spend-down is erroneous.

## I. CONSTITUTIONAL RIGHTS/AGENCY PRACTICE & PROCEDURE

Swartz contends that DPW violated her constitutional rights to fair play, due process and a reasonable opportunity to be heard. As a corollary argument, Swartz contends that the DPW also violated the practice and procedure of Commonwealth agencies.

The Medicaid program was established in 1965 in Title XIX of the Social Security Act (the Act)[3] in order to provide federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons. *Schweiker v. Hogan*, 457 U.S. 569, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982); *Bemowski v. Department of Public Welfare*, 136 Pa.Cmwlth. 103, 582 A.2d 103 (1990). Congress required States participating in the Medicaid program to provide coverage to individuals described as "categorically needy."[4] *Id.* At their option, participating States may also provide coverage to other individuals described as "medically needy." *Id.* The medically needy may be eligible to receive assistance only if their income and resources are insufficient to meet their necessary medical costs. *Id.*

Participating States must establish eligibility standards for the optional coverage provided to the medically needy. 42 U.S.C. § 1396a(a)(17). Participating States must also provide an opportunity for a fair hearing before the State's agency to any individual whose claim for MA is denied. 42 U.S.C. § 1396a(a)(3).

The Commonwealth of Pennsylvania is a participating State and through section 442.1 of the Public Welfare Code[5] has authorized DPW to establish standards of financial eligibility for MA benefits. DPW regulations establish a resource limit of $3,200 for a two person household applying for medically needy MA benefits. 55 Pa.Code § 178 (Appendix A). The regulations also establish due process standards for MA cases. 55 Pa.Code § 275.1 (relating to right to appeal and request fair hearing).

■ Swartz contends that CAO/Hearing Officer violated her constitutional rights when the two MA applications filed by the hospital were found as facts for the verification of excess resources. Swartz argues that DPW should be estopped from using these initial applications as findings against her, since they were filed by the hospital, not Swartz. Swartz argues that she is not bound by the applications filed by the hospital on her husband's behalf. We disagree.

DPW regulations clearly state that "if because of illness, infirmity ... a person is unable to apply for himself, ... [an] official of the institution or agency providing the service may apply on behalf of the applicant." 55 Pa.Code § 125.84(a)(5). Here, the hospital, as the institution caring for Mr. Swartz, applied for MA on his behalf. Reproduced Record (R.) at 100a–01a. As a result, CAO determined Mr. Swartz had excess resources in the amount of $133,611 based on his financial records. R. 45a. The applications were rejected due to excess resources. R. 52a. Swartz did not appeal. R. 100a. Accordingly, CAO/Hearing Officer did not violate Swartz's constitutional rights, nor did they violate practice and procedure, by using the initial applications, filed by the hospital, for determining excess resources.

■ Swartz further avers CAO's failure to perform duties owed to her induced her not to take action. Specifically, Swartz contends that CAO failed to interview her and her husband; identify problems with the application; and inform her of her right to reduce assets. As a result, she contends she was deprived of due process and an opportunity to be heard.

---

3. 42 U.S.C. §§ 1396–1396v.

4. Recipients who are aged, blind, disabled or families with dependent children.

5. Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101—1411. Section 442.1 was *added by* Act of July 31, 1968, P.L. 904, *as amended*, 62 P.S. § 442.1.

DPW regulations require caseworkers to assist applicants in establishing eligibility for MA. 55 Pa.Code § 121.3. However, this court has declined to interpret those regulations as requiring caseworkers to "assume the role of claimant advocates mandating that they attempt to ferret out all possible avenues of establishing a claimant's eligibility for benefits sought." *Bemowski*, 582 A.2d at 106. Ultimately, it is the applicant's responsibility to establish eligibility, not the caseworker's. *Id.*

The record reveals that CAO, acting upon the initial applications filed by the hospital, made a determination of excess resources of $133,611 and so advised Swartz. R. 52a. Swartz did not act on either application, and both applications were rejected. R. 38a.

Swartz then filed a new application on June 23, 1995 for retroactive MA. R. 52a. The CAO caseworker testified that she again advised both Swartz and her attorney that excess resources in the amount of $133,611 would have to be spent on unpaid medical bills in order to qualify for MA. R. 52a–53a, 40a. A deadline of July 21, 1995 was set to provide the necessary verification. R. 53a.

On August 10, 1995, Swartz submitted documentation that $90,083 of the $133,611 was expended. R. 53a. However, not all of the $90,083 was expended on medical bills. R. 59a, 91a, 53a. The CAO caseworker testified that she contacted Swartz on August 17, 1995 concerning these problems. R. 54a. The caseworker testified she repeated to Swartz the requirement to spend excess resources on medical bills and advised that if it was not, MA would be denied. R. 54a–55a.

Swartz advised CAO that the balance of the resources was not available and could not be spent on medical bills. R. 41a, 55a, 58a–61a. By notice of August 18, 1995, CAO advised Swartz her application for retroactive MA was denied since excess resources were applied to non-medical bills and were in excess of the resource limit. R. 45a. Swartz filed a timely appeal and the matter came before a hearing officer.

At the hearing, Swartz was given the opportunity to testify. R. 63a. She was also given the opportunity to submit documents to establish MA eligibility. R. 65a.

Accordingly, there is no support for the allegation that CAO committed misfeasance or induced Swartz not to act. The record reveals that CAO assisted Swartz with her application by identifying the problem of excess resources and advising Swartz to spend the excess on medical bills. The record also shows that Swartz was given adequate notice of the reason for denial of her application, a fair hearing regarding her application, and the reasonable opportunity to be heard and to present proof to establish eligibility for retroactive MA benefits. Therefore, the CAO and the hearing officer did not violate her constitutional rights nor did they violate Commonwealth agency practice and procedure.

■ Swartz also avers that her constitutional rights were violated when subsequent evidence of a material change in circumstances was not considered by the DPW in its final decision on the merits.

A party has the right to request reconsideration of the decision by the Secretary of the DPW. 55 Pa.Code § 275.4(h)(4)(ii). The Secretary is limited to reviewing the hearing record and is confined to matters of law and established departmental policy. 55 Pa.Code § 275.4(h)(4)(ii). The Secretary may affirm, amend or reverse the decision of the Director or remand the case to the hearing officer. *Id.* However, findings of fact made by the hearing officer are not subject to reversal. *Id.*

The hearing record consists of testimony and exhibits introduced into the hearing. 55 Pa.Code § 275.4(h)(i). Briefs and exhibits are due at the time of the hearing. 55 Pa.Code § 275.4(h)(2)(iii). If either party wishes to present additional exhibits after the conclusion of the hearing, the hearing officer may allow the record to be kept open for five working days. *Id.* However, new evidence submitted after a hearing record is closed cannot be legally considered. 55 Pa.Code § 275.4(h)(2).

The hearing was held on November 15, 1995. R. 47a. At that time, the hearing officer gave Swartz an opportunity to testify

and to submit additional evidence into the hearing record. On November 21, 1995, Swartz submitted evidence in support of her application. R. 70a–97a. Based on the evidence submitted, the hearing officer determined on March 15, 1996 that Swartz's resources still exceeded the prescribed limit by $8,617. R. 102a.

On April 10, 1996, Swartz submitted a letter to the hearing officer. The letter stated that she liquidated her remaining resources and expended $8,617 on medical bills. R. 108a. However, the letter was submitted long after the hearing record had closed. The Secretary's October 10, 1996 reconsideration was limited to reviewing what was before the hearing officer. The letter was not a part of the hearing record. Therefore, DPW did not violate Swartz's constitutional rights, nor did DPW err by not considering evidence submitted after-the-fact.

## II. RESOURCE VERIFICATION METHOD

█ Next, Swartz contends that the verification method used by DPW for determining resources for retroactive MA violated regulations. We disagree.

State regulations, based on federal statutory and regulatory requirements, establish which resources must be considered in determining eligibility for MA. 42 U.S.C. § 1396a(a)(17). DPW regulations define resources as "real or personal property which a person has or can make available for partial or total support, including equitable interests and partial interests." 55 Pa.Code § 178.2.

All resources, whether liquid or non-liquid, are counted in determining resource eligibility, unless specifically excluded by regulations. 55 Pa.Code § 178.1–178.3. A resource is legally available if there is proof of ownership and if there is a right and ability to use or dispose of the resource. 55 Pa.Code § 178.4. Resources are counted at their equity value,[6] unless otherwise specified. 55 Pa. Code § 178.1(d).

Eligibility for retroactive MA is based on the amount of resources which existed during the retroactive period. 55 Pa.Code § 178.1(j). If the total amount of resources, which are not specifically excluded pursuant to federal and state law, exceed the MA resource limit of $3,200, the individual is ineligible. 55 Pa. § 178.1(c).

Swartz relies on section 178.1(f) which provides "only those resources which are actually available are considered resources when determining medical assistance eligibility." Swartz argues that the IRA, savings bonds, boat and boat trailer, vehicles, and funeral/estate charges were not "actually available" to her and were improperly considered resources for determining MA eligibility.

Assuming *arguendo,* if we accept Swartz's argument that these assets were not "available," then the total excess resources would have been $133,611 less $36,861, or $96,750. Assuming further that the entire $90,083 was applied to medical expenses, Swartz's excess resources would have been $6,667. This is still $3,467 over the prescribed limit of $3,200. Therefore, even if Swartz was able to successfully establish that these assets were improperly included as resources, the ineligibility determination would still stand.

## III. REDETERMINATION

█ Swartz further contends that the CAO and hearing officer violated DPW regulations by not redetermining MA eligibility before DPW's final order on the merits. Swartz contends that the DPW should have completely or partially redetermined[7] her eligibility status based on her letter of April 10, 1996, which showed that excess resources were applied to medical bills and were now within the prescribed limit. Swartz argues that if a redetermination of her application was made after April 10, 1996, she would have been eligible for MA.

Swartz relies on 55 Pa.Code § 133.84(c) which provides "eligibility will be redetermined as frequently as warranted by the

---

6. Equity value is defined as "the FMV less legal encumbrances, including liens and mortgages." 55 Pa.Code § 178.2.

7. A complete redetermination is a review of eligibility factors. 55 Pa.Code § 133.84(c). A partial redetermination is a review that focuses on specific eligibility factors. 55 Pa.Code § 133.84(d).

circumstances of the individual case, but no less frequently than the following: (1) At least every 12 months for aged, blind and disabled categories; (2) At least every 6 months for other categories." However, redetermination regulations are applicable to recipients, not applicants.[8]

A redetermination of resources which may be available to the client are required in order to establish "continuing eligibility." 55 Pa.Code § 133.83(a). While the regulations do not define "client," it is clear from the context that to continue eligibility of MA one must be a recipient of MA, not merely an applicant. The regulations further provide that conditions of eligibility will be verified at the time of a redetermination and if "the recipient has cooperated in the verification attempt, assistance will continue." 55 Pa. Code § 201.3. Additionally, federal regulations only require participating States to redetermine the eligibility of MA recipients and are silent as to MA applicants. Medicaid Regulations, 20 C.F.R. § 435.916 (1986).

Swartz's husband was applying for MA and was thus an applicant. Since his application was ultimately denied, he was never a "recipient." Consequently, Swartz was not in a position to have eligibility redetermined. Therefore, DPW did not violate the law by not redetermining Swartz's MA eligibility.

## IV. RESOURCE SPEND–DOWN

■ Finally, Swartz contends that the hearing officer's conclusion of law that there is no "spend-down" of excess resources for initial or continuing eligibility for MA is erroneous. Swartz avers that this conclusion is directly contradicted by regulations and statements made by the CAO and the hearing officer. Swartz avers that section 178.1(c) authorizes resource spend-down.[9]

Resource spend-down permits an applicant to be personally liable for the amount by which her resources exceed the regulatory amount. *Bemowski.* The amount for which she is personally liable would then be deduct-

ed from the actual medical expenses in order to compute MA benefits. *Id.* While federal law requires participating States to use income spend-down, it is silent regarding resource spend-down. 42 U.S.C. § 1396a(a)(17)(D). Therefore, participating States are permitted, but are not required, to use resource spend-down. *Bemowski.*

In situations involving excess resources, this court has held that DPW's regulations do not provide for resource spend-down. *Id.* The fact that the CAO caseworker and hearing officer used the vernacular synonyms "spend" or "spend-down" for "pay" does not change the law. Therefore, the hearing officer did not err in his conclusion of law that there is no resource spend-down.

Accordingly, the order of the DPW is affirmed.

### ORDER

AND NOW, this 24th day of June, 1997, the final order of the Department of Welfare, dated October 10, 1996, at No. 670156311–001, is affirmed.

---

8. An applicant is a person applying for MA, whereas a recipient is a person receiving MA. 55 Pa.Code § 178.2.

9. Section 178.1(c) provides an applicant is "ineligible for MA on the date that his resources exceed the MA resource limit ... and he remains ineligible until his resources are equal to, or less than, the resource limit." 55 Pa.Code § 78.1(c).