Mary ORIOLO, Petitioner,

v.

**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 7, 1997.

Decided Jan. 13, 1998.

Peter J. Verderame, Langhorne, for petitioner.

P. Amber Jones, Harrisburg, for respondent.

Before COLINS, President Judge, FRIEDMAN, J., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Mary Oriolo (Oriolo) appeals from an order of the Secretary of the Department of Public Welfare (DPW) which affirmed a decision of its Bureau of Hearings and Appeals (BHA) denying Oriolo's request for medical assistance (MA) benefits. We affirm.

Oriolo was admitted to Attleboro Nursing Home (nursing home) on April 8, 1995. (DPW's Findings of Fact, No. 2.) On July 31, 1995, Oriolo filed an application to the Bucks County Assistance Office (CAO) for MA benefits to assist in covering the costs of her nursing home care. (DPW's Findings of Fact, No. 1.)

After being admitted to the nursing home, but before filing the MA application, Oriolo transferred all of the resources jointly owned by her and her husband into her husband's name alone. (DPW's Findings of Fact, No. 2.) Upon receiving Oriolo's application, the CAO determined that Oriolo's resources exceeded the appropriate MA resource limit and denied her application.[1] (DPW's Findings of Fact, No. 8.)

■ Oriolo appealed the CAO's denial of her MA application to BHA, and, following a hearing before a hearing officer, a BHA Attorney Examiner issued an order denying Oriolo's request for MA benefits due to excess resources. The same day, BHA's Official in Charge issued a final administrative action order affirming the order of the Attorney Examiner. Oriolo appealed, and the Secretary of DPW affirmed. Oriolo now appeals to this court.[2]

On appeal, Oriolo asserts that DPW erred when it concluded that her application for MA benefits must be denied due to excess resources; Oriolo believes that the transfer of resources she made to her spouse rendered her eligible for MA benefits at the time of her application. We disagree.

1. The CAO determined that, as of April 1995, Oriolo and her husband had resources totaling $103,800.88. (DPW's Findings of Fact, No. 4.) The resources consisted of a savings account valued at $7,286.14; a checking account valued at $1,469.47; three certificates of deposit valued at $95,000.00; and a life insurance policy which had a cash value of $45.27. Although Oriolo no longer had resources in her name, the CAO considered all of the income and assets in Oriolo's husband's name to be joint resources. (DPW's Findings of Fact, No. 3.)

2. Our scope of review of a final order of DPW is limited to determining whether it was supported by substantial evidence, an error of law was committed or constitutional rights were violated. *Buck v. Department of Public Welfare*, 130 Pa. Cmwlth. 51, 566 A.2d 1269 (1989).

The Medicaid program was established in 1965 in Title XIX of the Social Security Act[3] to provide federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons. *Swartz v. Department of Public Welfare*, 697 A.2d 588 (Pa.Cmwlth.1997) (citing *Schweiker v. Hogan*, 457 U.S. 569, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982)). Congress requires states that choose to participate in the Medicaid program to provide coverage to individuals described as "categorically needy."[4] *Swartz*. At their option, participating states may also provide coverage to individuals described as "medically needy," those persons whose income and resources are insufficient to meet their necessary medical costs. 42 U.S.C. § 1396a(a)(10)(C); *Swartz*. States participating in the federal Medicaid program must establish eligibility standards for the optional coverage provided to the medically needy. 42 U.S.C. § 1396a(a)(17); *Swartz*.

The Commonwealth of Pennsylvania participates in the Medicaid program and, through section 442.1 of the Public Welfare Code,[5] has authorized DPW to establish standards of financial eligibility for MA benefits. Pursuant to this authorization, DPW has promulgated regulations establishing such criteria. Under the DPW regulations, one person applying for "medically needy" MA benefits cannot have resources exceeding $2,400.00. 55 Pa.Code § 178 (App.A). All resources are counted in determining resource eligibility for MA, unless specifically excluded by DPW regulations.[6] 55 Pa.Code § 178.1(b).

3. 42 U.S.C. §§ 1396–1396v.

4. "Categorically needy" includes recipients who are aged, blind, disabled or families with dependent children. *Swartz*.

5. Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101–1503. Section 442.1 was added by Act of July 31, 1968, P.L. 904, *as amended*, 62 P.S. § 442.1.

6. Resources are defined as "[r]eal or personal property which a person has or can make available for partial or total support, including equitable interests and partial interests." 55 Pa.Code § 178.2.

DPW regulations specifically address resource eligibility requirements for married couples with one member in an institution; these couples consist of an "institutionalized spouse" and a "community spouse." [7] 55 Pa. Code §§ 178.121–178.126. To determine whether an institutionalized spouse is eligible for MA benefits, the CAO must calculate the "spousal share of resources" if that figure was not already determined before the MA application was filed. 55 Pa.Code § 178.123(a)(1). The spousal share is one half of the "total countable verified resources *owned by the couple when the spouse was institutionalized for [nursing facility care].* ..." 55 Pa.Code § 178.123 (emphasis added); § 178.121(g). Here, neither Oriolo nor DPW disputes the CAO's determination that Oriolo's spousal share is $51,900.44, calculated by dividing in half the total joint resource amount of $103,800.88 on the date Oriolo was institutionalized.[8] (DPW's Findings of Fact, No. 5.)

■ After an MA applicant's spousal share is calculated, the CAO must then determine whether the institutionalized spouse is resource eligible to receive MA benefits. *See* 55 Pa.Code § 178.124. To make this determination, the *"couple's* countable verified resources are totaled at the time of the MA application." 55 Pa.Code § 178.124(a)(1) (emphasis added).[9] Here, Oriolo argues that she was eligible for MA benefits at the time she completed the MA application because, due to the transfer of resources to her husband's name alone, she no longer had resources and, thus, satisfied the resource eligibility requirement mandated by DPW. Because the transfer of resources had no effect on Oriolo's eligibility to receive MA benefits, her argument must fail.[10]

7. An "institutionalized spouse" is defined as "[t]he spouse who is receiving skilled care, heavy care/intermediate services or intermediate care in a nursing facility or other medical institution ... for a period likely to last for at least 30 consecutive days." 55 Pa.Code § 178.2. A "community spouse" is defined as "[t]he spouse living at home who has a spouse who had lived at home but is now an institutionalized spouse." *Id.*

8. DPW regulations require an MA applicant, or person acting on the applicant's behalf, to report and verify the ownership, value and disposition of resources so that a resource assessment may be computed. 55 Pa.Code § 178.3. In this case, Oriolo's husband refused to complete a resource assessment form as required by DPW (DPW's Findings of Fact, No. 2); he did, however, provide the CAO with figures that the CAO used to reach a total of $103,800.88. DPW, therefore, recognized that the determination of the spousal share may be inaccurate because the CAO was unable to verify the information provided by Oriolo's husband when he refused to complete or sign the resource assessment form. (DPW's August 15, 1996 Discussion of Law.) Further, DPW noted that the spousal share may also be inaccurate "in light of recent changes in the computation method used by the Department...." (DPW's August 15, 1996 Discussion of Law.) Oriolo, however, has not challenged the spousal share calculation.

9. 55 Pa.Code § 178.124(a) provides:
(2) If the spousal share ... is equal to, or more than, the couple's total countable verified resources at the time of the MA application, the institutionalized spouse is resource eligible.

(3) If the spousal share ... is less than the couple's total countable resources at the time of the MA application, deduct from the couple's countable verified resources at the time of the MA application, the greater of the following amounts:
(i) The community spouse share, not to exceed the maximum community spouse resource standard in 42 U.S.C.A. § 1396r–5(f)(2)(A) subject to adjustment under 42 U.S.C.A. § 1396r–5(g)....
(ii) The standard community spouse resource standard in 42 U.S.C.A. § 1396r–5(f)(2)(A)(i) subject to adjustment under 42 U.S.C.A. § 1396r–5(g)....
(iii) The amount of the resources in excess of the maximum community spouse resource standard transferred by the institutionalized spouse to the community spouse under a court support order.....
(iv) The amount designated by a Departmental hearing decision.
(4) Compare the remaining resources to the one person resource limit in Appendix A for the appropriate MA program.
(5) If the remaining resources are equal to, or less than, the appropriate MA resource limit in Appendix A for the appropriate MA program, the institutionalized spouse is resource eligible.

10. Oriolo contends that the transfer of resources she made to her husband was an exempt transaction, pursuant to 55 Pa.Code § 178.174, that did not render her ineligible for MA benefits. We note, however, that neither DPW nor we conclude that it was the transfer that rendered Oriolo ineligible for MA benefits; the transfer had no effect on Oriolo's resource eligibility.

According to DPW regulations, the CAO was required to total the "couple's" resources at the time Oriolo filed the MA application to determine whether Oriolo was eligible to receive MA benefits. 55 Pa.Code § 178.124(a)(1). A clarification of the term "couple" is necessary to determine whether the CAO erred in assessing Oriolo's eligibility. Oriolo appears to believe that resources of the "couple" refers to only those resources owned jointly by the institutionalized spouse and the community spouse. We disagree.

The DPW regulations fail to define or explain the term "couple", but we can derive guidance from the federal statute that addresses grants to states for MA programs. Section 303 of the Medicare Catastrophe Coverage Act, 42 U.S.C.A. § 1396r–5 (1997),[11] makes clear that all of the resources held by *either* the institutionalized spouse, the community spouse, or both, must be attributed to the institutionalized spouse when initially determining whether the institutionalized spouse is eligible to receive MA benefits.[12] *See* 42 U.S.C.A. § 1396r–5(c)(2)(A).

■ DPW's interpretation of the term "couple" further supports a determination that resources of the "couple" means more than just resources owned jointly by the institutionalized spouse and community spouse. Here, DPW interpreted the resources of the "couple" as referring not only to resources owned jointly by Oriolo and her husband, but also to resources owned by Oriolo alone, and by Oriolo's husband alone. We are bound by the well-settled principle that an agency's interpretation of the regulations that it enforces is entitled to great judicial deference. *Linde Enters., Inc. v. Pennsylvania Dep't of Envtl. Protection,* 692

A.2d 645 (Pa.Cmwlth.), *appeal denied,* 549 Pa. 707, 700 A.2d 445 (1997).

■ Guided by the federal statute's interpretation of "couple" and the well-settled principle that we must give great judicial deference to DPW's interpretation of its own regulations, we must conclude that the resources held only in Oriolo's husband's name were properly attributed to Oriolo for purposes of determining her eligibility for MA benefits. Thus, the transfer of resources Oriolo made to her husband had no effect on Oriolo's eligibility for those benefits.

Because the resources attributable to Oriolo exceeded the resource limit mandated by DPW regulations at the time of her application, Oriolo was not eligible for MA benefits and the CAO did not err in denying Oriolo's application. Accordingly, we affirm the order of the Secretary of DPW.[13]

## *ORDER*

AND NOW, this 13th day of January, 1998, the order of the Secretary of the Department of Public Welfare (DPW), dated April 21, 1997, is hereby affirmed.

---

**11.** 42 U.S.C.A. § 1396r–5(a)(4)(B) provides: "This section shall ... apply to ... the 50 States...."

**12.** 42 U.S.C.A. § 1396r–5(c)(2) (emphasis added) provides:

> (2) Attribution of resources at time of initial eligibility determination. In determining the resources of an institutionalized spouse at the time of application for benefits ..., regardless of any State laws relating to community property or the division of marital property—
>
> (A) ... all the resources held by *either the institutionalized spouse, community spouse, or*

*both,* shall be considered to be available to the institutionalized spouse ...

> (B) ... but only to the extent that the amount of such resources exceeds the [protected spousal share]....

**13.** Oriolo makes an additional argument that she is entitled to attorney's fees and costs pursuant to 42 PA.C.S. sections 1726 and 2503. We first note that because the issue has not been previously addressed in this case, it is beyond our limited scope of review. However, based on our decision in this case, Oriolo's argument that she is entitled to attorney's fees is now moot.