**ALTAGRACIA DE PENA FAMILY DAY CARE, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 2007.

Decided Dec. 21, 2007.

Publication Ordered Feb. 28, 2008.

David Vaida, Allentown, for petitioner.

Megan A. Wiest, Asst. Counsel, Wilkes–Barre, for respondent.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Altagracia De Pena Family Day Care (Daycare) petitions for review of a decision of the order of the Bureau of Hearings and Appeals (Bureau) of the Department of Public Welfare (DPW) which adopted in its entirety the recommendation of the Administrative Law Judge (ALJ) and denied

the Daycare's appeal from a decision of DPW to revoke the Daycare's registration certificate for a violation of the Public Welfare Code[1] (Code). We affirm.

The Daycare is a "family day care home"[2] located in Allentown, Pennsylvania, which operates pursuant to a registration certificate issued by DPW. Altagracia Depena (Depena) is the principal of the Daycare. On April 19, 2006, DPW made a preliminary decision to revoke the Daycare's registration certificate based upon noncompliance with the Code and DPW regulations, gross incompetence and failure to submit an acceptable plan of correction. Depena filed a timely appeal. An administrative hearing was held on April 2, 2007 before the ALJ. Depena and DPW presented witnesses and exhibits. Based upon the testimony and evidence presented, the ALJ made the following findings.

The Daycare is run by Depena and her two sons and has been in operation for several years. In December 2005, the Daycare was shut down because of a mouse infestation in the Daycare's kitchen. On February 1, 2006, a two-year-old child wandered out of the Daycare and into the middle of the street. A neighbor found the two-year-old child in the street. The neighbor refused to return the child to the Daycare and notified the Allentown Police. At the time the child wandered off, Depena had left the Daycare to take or retrieve another child, also in the Daycare, to or from school. Depena's two sons were left to watch the remaining children in the Daycare and were so inattentive that they never knew the two-year-old child had strayed from the Daycare. Depena's sons were not qualified to be caregivers to young children under DPW regulations because they did not have first aid training, a physical and a TB test on file.

The errant two-year-old prompted a licensing inspection from Peggy Peruginot on February 6, 2006. Peruginot interviewed Depena, who admitted that the two-year-old child had left the premises of the Daycare and that neither she, nor her sons, was aware that the child was missing until they saw the child with a neighbor. Peruginot cited Depena for lack of proper supervision of children at the Daycare. DPW treated the circumstances surrounding the February 1, 2006 as gross incompetence, and gave Depena notice on April 19, 2006 that it intended to revoke her daycare certificate of compliance. Depena submitted a plan of correction on April 24, 2006 and filed a timely appeal. Pending the appeal, Depena continued to operate the Daycare. On May 31, 2006, DPW conducted an additional inspection, at which time DPW found five additional violations: (1) a knife laying within reach of young children, (2) toxic cleaning fluids within reach in the daycare area, (3) lack of an emergency plan, (4) unprotected electrical plugs, and (5) unprotected baseboard heat. Depena did not dispute the occurrence of the violations.

The ALJ found the testimony of Depena not credible and the testimony of Peruginot credible. The ALJ ultimately found Depena's failure to provide adequate supervision of the children in the Daycare to be a serious violation of the Code and that the corrective plan submitted by Depena does not indicate correction for this violation.

1. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 101–1503.

2. A "family day care home" means "any home in which child day care is provided at any one time to four through six children who are not relatives of the caregiver." Section 1070 of the Code, 62 P.S. § 1070; *accord* 55 Pa.Code § 3290.4.

By adjudication dated May 16, 2007, the ALJ recommended that the Daycare's appeal be denied. The Daycare then filed an appeal with the Bureau, which adopted the ALJ's recommendation in its entirety. This appeal now follows.[3] The Daycare raises the issue of whether the Bureau abused its discretion by adopting the recommendation of the ALJ in its entirety.

■ While recognizing that DPW is authorized to revoke a registration certificate for noncompliance with regulations, the Daycare argues that DPW has erred or abused its discretion by failing to grant her a provisional license for six months pursuant to Section 1008 of the Code, 62 P.S. § 1008, as required by equity.[4] We disagree.

Pursuant to Section 1079(b)(1) of the Code, 62 P.S. § 1079(b), DPW "shall refuse to issue or renew a registration certificate or shall revoke a registration certificate" for several reasons, including "noncompliance with department regulations" and "gross incompetence, negligence, or misconduct in operating the facility." The regulations pertaining to family day care homes are located in the Pennsylvania Code, Chapter 3290. Pursuant to the regulations, "[c]hildren on the facility premises shall be supervised at all times. Outdoor play space used by the facility is considered part of the facility premises." 55 Pa.Code § 3290.113(a).

■ It is well settled that one regulatory violation is sufficient to revoke a license issued by DPW, or in this case, a registration certificate to operate a family day care home. *See Pine Haven Residential Care Home v. Department of Public Welfare*, 99 Pa.Cmwlth. 1, 512 A.2d 59 (1986); *Colonial Manor Personal Care Boarding Home v. Department of Public Welfare*, 121 Pa.Cmwlth. 506, 551 A.2d 347 (1988), *petition for allowance of appeal denied*, 524 Pa. 631, 574 A.2d 72 (1990). Corrective action taken after a regulatory violation is irrelevant for purposes of determining whether a violation occurred. *See Department of Health v. Brownsville Golden Age Nursing Home, Inc.*, 103 Pa. Cmwlth. 449, 520 A.2d 926, 936 n. 7 (1987).

In this case, Depena does not dispute that she violated Section 3290.113 of DPW's regulations on February 1, 2006 when a two-year-old child wandered off the premises of the Daycare. Depena's claims that equity requires that she should have been given a provisional license because she took corrective action must fail for two reasons. First, any subsequent corrective action is irrelevant in determining whether a violation occurred. While Depena submitted a plan of correction, the Bureau found that the plan did not address the child supervision violation. Following this violation, DPW found five additional regulatory violations during the unannounced inspection on May 31, 2006.

■ Second, the Code only provides for provisional licenses for licensed facilities,

---

**3.** Our scope of review of a final order of DPW is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Oriolo v. Department of Public Welfare*, 705 A.2d 519 (Pa. Cmwlth.1998).

**4.** DPW contends that this argument was not raised before the ALJ or Bureau, and is therefore waived. While a review of the record reveals that a provisional license was not specifically mentioned or requested by the Daycare during the hearing, it is fairly encompassed within Daycare's argument that its registration certificate should not be revoked because corrective action was taken and would continue to be taken by the facility to ensure compliance.

such as child day care centers,[5] which demonstrate substantial compliance with the applicable statutes, ordinances and regulations. Section 1008 of the Code, 62 P.S. § 1008.[6] The Daycare, however, was not a licensed facility under Sections 1001–1031 of the Code, 62 P.S. §§ 1001–1031, but rather was a registered facility under Section 1071 of the Code, 62 P.S. § 1071. Nowhere within the registration provisions for family day care homes is there a section permitting the issuance of provisional registration certificates. *See* Sections 1070–1080 of the Code, 62 P.S. §§ 1070–1080. We, therefore, conclude that DPW did not err or abuse its discretion by refusing to issue a provisional license to the Daycare. We further conclude that DPW presented substantial evidence of a serious regulatory violation, justifying revocation of the Daycare's registration certificate.

Accordingly, the order of the Bureau is affirmed.

### ORDER

AND NOW, this 21st day of December, 2007, the order of the Bureau of Hearings and Appeals of the Department of Public Welfare, at Docket No. 18–06–031, dated June 1, 2007 is AFFIRMED.

---

**5.** A "child day care center" is "any premises operated for profit in which child day care is provided simultaneously for seven or more children who are not relatives of the operator, except such centers operated under social service auspices." Section 1001 of the Code, 62 P.S. § 1001.

**6.** This section provides:

When there has been substantial but not complete compliance with all the applicable statutes, ordinances and regulations and when the applicant has taken appropriate steps to correct deficiencies, the department shall issue a provisional license for a specified period of not more than six months which may be renewed three times. Upon full compliance, a regular license shall be issued immediately.