Donna L. GIBBS, Petitioner

v.

### DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 11, 2008.

Decided April 10, 2008.

Reargument Denied June 2, 2008.

---

Donna L. Gibbs, petitioner, pro se.

Daniel Fellin, Asst. Counsel and Allen C. Warshaw, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Donna L. Gibbs petitions *pro se* for review of an adjudication of the Department of Public Welfare (Department) revoking her registration certificate to operate a family child day care home.[1] In this appeal, we must determine whether the facts as found by the Department support the legal conclusion that the certificate was properly revoked. Concluding that they do not, we reverse.

The facts of this case are undisputed. Gibbs holds a registration certificate to operate a day care facility in her home, which allows her to care for her own children and up to six other children. In May 2006, the children were playing in the back yard under Gibbs' supervision. When Gibbs went in the house to have a private conversation with the parent of one of the day care children, she instructed her twenty year old son, who worked at the day care center, to watch the children. Three minutes later, a two year old child left the yard and went across the street to a neighbor's house. The neighbor called Gibbs. Until that phone call, Gibbs was not aware that the child had left the yard. The street that the child crossed is an untravelled dead-end street located about a quarter mile from a busier street.

---

1. A "family child day care home" is defined as "[a] home other than the child's own home, operated for profit or not-for-profit, in which child day care is provided at any one time to four, five or six children unrelated to the operator." 55 Pa.Code § 3290.4.

Based on this incident, the Department notified Gibbs that it was revoking her certificate to operate a family child day care home. Gibbs appealed, and a hearing was held before an administrative law judge (ALJ) from the Department's Bureau of Hearings and Appeals (Bureau).

At the hearing, Gibbs testified. She admitted that a two year old girl went to the neighbor's house and that her son had failed to follow directions. Gibbs stated that she had been in the house with a parent for three minutes when she received the call from her neighbor. Gibbs explained that the neighbor is a police officer and a friend of hers, and that he was outside washing his car when the child came over. She also stated that she lives in a rural area and that the street the child crossed is a dead-end street that has hardly any traffic, as there are only four houses on the street. Gibbs explained that her yard is fenced on two sides. She plans to install a gated fence around the entire perimeter of her yard if her certificate is not revoked. Gibbs testified that she fired her son on the spot for failing to follow her directive.

Gibbs also submitted into evidence several letters, including two letters from mothers of children at Gibbs' day care. The mothers stated that they had a very favorable opinion of Gibbs and her day care, and they wished it to remain open. Exhibits No. A–2, A–4.

The Department presented testimony from Shraddha Pathak, a child care licensing representative with the Office of Child Development. Ms. Pathak investigated the incident of the child leaving the yard and participated in the decision to revoke Gibbs' certificate. Ms. Pathak explained that in deciding whether an incident deserves the sanction of certificate revocation, she and her Department colleagues assess the seriousness of the risk to the child. In this case, the factors they considered were the lack of supervision; the lack of a fence to keep the child in the yard; and the proximity of the dead-end street to a well-traveled road. Ms. Pathak stated that lack of supervision is very serious, whether it endures for thirty seconds or five hours; her office views both situations as the same. Ms. Pathak testified that only the particular incident is taken into account in deciding whether to revoke the certificate; no consideration is given to how long the day care has been operating, the favorable reputation of the day care provider, or whether there have been any prior incidents or citations.

The ALJ recommended that the Bureau affirm the Department's decision to revoke Gibbs' certificate to operate a family day care center. The ALJ found that Gibbs had failed "to properly supervise children in her care" and "failed to properly guard against children leaving her facility by not having her yard fenced-in so that a young child could not have left her facility." ALJ Opinion at 3. The ALJ also concluded that allowing a child in her care to leave the yard constituted gross incompetence, negligence or misconduct in operating her day care, in violation of the Department's regulations. Finally, the ALJ determined that a single violation of the regulations was sufficient to revoke a day care center's certificate where, as here, the safety of a child is at stake.

On February 9, 2007, the Bureau adopted the ALJ's recommendation in its entirety. Gibbs sought reconsideration, and it was granted. However, on June 29, 2007, the Secretary of Public Welfare issued a final order upholding the Bureau's decision. Gibbs then sought this Court's

review.[2] She also filed a motion for a stay, and it was granted by this Court on August 7, 2007. Accordingly, Gibbs' day care center has remained open pending this Court's decision on the merits of Gibbs' appeal.

On appeal, Gibbs presents one issue for our consideration. She contends that the Department erred in revoking her certificate on the basis of one incident that was rectified. In support, she argues that she did not violate the regulations and the Department failed to take into account the fact that the child was not hurt and that she has taken steps to ensure that a similar incident will not occur in the future. Gibbs also contends that the Department should have considered that there were no other charges ever lodged against her.

We begin with a review of the applicable statutory and regulatory law. The Public Welfare Code[3] authorizes the Department to revoke a registration certificate. Specifically, Section 1079(b)[4] states as follows:

> (b) The department shall refuse to issue or renew a registration certificate or shall revoke a registration certificate for any of the following reasons:

> (1) *Noncompliance with department regulations.*

> (2) Fraud or deceit in the self-certification process.

> (3) Lending, borrowing, or using the registration certificate of another caregiver, or in any knowingly aiding the improper issuance of a registration certificate.

> (4) *Gross incompetence, negligence, or misconduct in operating the facility.*

> (5) Mistreating or abusing children cared for in the facility.

62 P.S. § 1079(b) (emphasis added). Here, Gibbs was found to have operated her facility in a way that did not comply with Department regulations and in a negligent or a grossly incompetent manner.

Department regulations also pertain to this case. The regulation at 55 Pa.Code § 3290.18[5] states in broad language that conditions at the day care center may not threaten the health and safety of children. The Department determined that the lack of a fully fenced-in yard violated this provision. The regulations at 55 Pa.Code § 3290.113[6] and § 3290.113a[7] provide that

---

**2.** This Court's scope and standard of review of an order of the Department is to determine whether constitutional rights were violated, an error of law was committed, or findings of fact were not supported by substantial evidence. *Integrated Behavioral Health Services v. Department of Public Welfare*, 871 A.2d 296, 299 n. 6 (Pa.Cmwlth.2005).

Gibbs has submitted various items, such as letters she sent to the Department, in her reproduced record or as attachments to her brief. However, we do not consider anything that is not part of the certified record. *See Pimentel v. Workers' Compensation Appeal Board (United Neighborhood Centers)*, 845 A.2d 234, 238 n. 10 (Pa.Cmwlth.2004) (explaining the well-settled principle that appellate courts cannot consider any evidence that is not part of the certified record).

**3.** Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101–1503.

**4.** Added by section 2 of the Act of December 5, 1980, P.L. 1112.

**5.** It states: "Conditions at the facility may not pose a threat to the health or safety of the children." 55 Pa.Code § 3290.18.

**6.** It states:

Children on the facility premises shall be supervised at all times. Outdoor play space used by the facility is considered part of the facility premises.

55 Pa.Code § 3290.113(a).

**7.** It states:

Children of facility excursions off the premises shall be directly supervised at all times by a staff person....

55 Pa.Code § 3290.113a.

a child must be supervised both on and off the day care center's premises.[8] The Department concluded that Gibbs also violated these provisions.

We turn, then, to Gibbs' argument that the incident in question did not warrant a revocation of her registration certificate. Gibbs argues that she did not violate the regulations because, contrary to the Department's position, she *did not* leave the child unsupervised; she left the toddler under the supervision of an adult. Gibbs also disputes the determination that she violated the regulations by not having a fully fenced-in yard; she was not required to have a fully fenced-in yard prior to obtaining a registration certificate and was never informed that a complete fence was a requirement for operating a home day care. The fence only became an issue with the Department after the incident occurred. Gibbs further asserts that her conduct did not amount to gross incompetence, negligence or misconduct.

In response, the Department counters that Gibbs did violate the regulations by leaving a child unsupervised and by failing to have in place "any measures," *i.e.*, a fence, to prevent a child from walking away from the facility. The single viola-

tion of the regulation, the Department contends, authorized its revocation of Gibbs' registration certificate.[9] The Department also argues that leaving a child without supervision in an unfenced yard constitutes gross incompetence, negligence or misconduct in violation of the Public Welfare Code.

■ The Department argues that Gibbs left the child without supervision, but *this is not the case*. Gibbs did not simply walk away from the children, leaving them to fend for themselves. She left the children under the supervision of an adult employee of the day care when she went in the house to speak privately with one of the parents. There is no requirement stated in either statute or regulation that the owner of a day care center must personally supervise the children at all times. Gibbs arranged for the children to be supervised, but her employee did not follow her directions. We hold that Gibbs complied with the regulations by entrusting the children to the supervision of an adult employee.[10]

■ The Department's contention that the lack of a fully fenced-in yard violates the regulation with respect to health and safety is unsupportable. The lack of a

8. We note that the requirement that children must be supervised "at all times" seems to be an extremely difficult, if not impossible, standard to meet, especially considering Ms. Pathak's explanation that the Department views lack of supervision for even thirty seconds the same as leaving children alone for hours. In theory, then, a day care provider who turns her back to help one child for thirty seconds will be subject to losing her registration certificate if any of the other children are unsupervised during that time.

9. The Department correctly points out that it is authorized to revoke a registration certificate based on even a single violation of the regulations. *See Pine Haven Residential Care Home v. Department of Public Welfare*, 99 Pa.Cmwlth. 1, 512 A.2d 59, 61 (1986).

10. The Department determined that Gibbs violated 55 Pa.Code § 3290.113a, which requires children off the day care premises to be supervised by a staff person. However, this regulation appears to be inapplicable to the present situation because it applies to "facility excursions off the premises." A child wandering away from the premises cannot reasonably be characterized as a "facility excursion." In this case, the child's lack of supervision off the premises would have to be viewed as an extension of the alleged lack of supervision while the child was still on Gibbs' premises. Therefore, the only applicable regulation is 55 Pa.Code § 3290.113, which concerns supervision on the premises.

complete fence was not a concern for the Department prior to this incident, and the Department does not assert that having a fenced-in yard is a requirement for a home day care facility. Indeed, if it had been, the Department should not have issued Gibbs a registration certificate. The Department has not announced either in a statement of policy or in a regulation that a completely fenced-in yard is a condition of licensure. To establish a specific licensing requirement, such as fencing, and then impose it upon one licensee, *i.e.,* Gibbs, after the fact cannot be countenanced.

Finally, we turn to the alternative reason for revoking the license, which was the conclusion that Gibbs was guilty of gross incompetence, negligence or misconduct in running the day care. Again, we disagree. Gibbs did not leave the children without supervision. The duty of supervision was entrusted to an adult employee, who also happened to be her son, and he failed to follow directions. In order for Gibbs' actions to constitute gross incompetence, negligence or misconduct, the De-

partment had to produce evidence that entrusting supervision to an adult for a short time was itself grossly incompetent, negligent or willful misconduct.[11] If her son was known to be untrustworthy or unreliable, Gibbs' decision might have been negligent or incompetent. However, there is no such evidence. In the absence of such a record, the Department simply holds Gibbs to a strict liability standard, which is not stated in the Public Welfare Code or the regulations.[12]

For these reasons, the Department erred, and we reverse its adjudication.[13]

Judge PELLEGRINI dissents.

### ORDER

AND NOW, this 10th day of April, 2008, the order of the Department of Public Welfare dated June 29, 2007, in the above captioned matter is hereby REVERSED.

---

**11.** The Department cites *Winston v. Department of Public Welfare,* 675 A.2d 372 (Pa. Cmwlth.1996) for the proposition that leaving children unsupervised amounts to gross incompetence, negligence or misconduct. In *Winston,* this Court was disturbed by the fact that thirteen infants were left alone with no adult supervision and agreed that it amounted to gross incompetence, negligence or misconduct. This case is distinguishable as Gibbs arranged for adult supervision.

**12.** We acknowledge this Court's recent opinion in *Altagracia De Pena Family Day Care v. Department of Public Welfare,* 943 A.2d 353 (2007), which affirmed the Department's decision to revoke a day care's registration certificate for a violation of the Public Welfare Code. There, the registration certificate was revoked for lack of supervision after the day care provider left the premises and left her two sons in charge. The sons, who were not qualified caregivers, failed to supervise the children and a two year old child wandered into the street. That case is distinguishable

inasmuch as the day care provider never argued that she did not violate the Code, and she did not appeal on that basis. In addition, the licensee did not dispute that her sons were not competent to be caregivers. Here, Gibbs argued that she did not violate the Code and the Department made no allegation that Gibbs' twenty year old employee was not qualified. Further, the day care in *De Pena* was cited for numerous other violations including having a knife and toxic cleaning fluids within reach of the children. Here, the only other cited "violation" was lack of a fully fenced-in yard, which we have already determined was an after-the-fact issue that the Department wrongly sought to classify as a violation. In short, *De Pena* dealt with a different situation and different issues on appeal, and does not control the outcome of this case.

**13.** Based on our disposition of the case, we will not address the remainder of Gibbs' arguments.