# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aa to Zz Childcare and Learning Center,   :
                    Petitioner   :
                                :
           v.   :     No. 651 C.D. 2018
                                :     SUBMITTED: April 9, 2019
Department of Human Services,   :
                   Respondent   :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                **FILED: May 1, 2019**

       Aa to Zz Childcare and Learning Center (Center) petitions for review of an adjudication of the Department of Human Services (Department) revoking the Center's certificate of compliance to operate a child day care center. Having determined that the undisputed facts support the legal conclusion that the certificate was properly revoked, we affirm.

       The pertinent facts are as follows. Located in Hummelstown, PA, the Center opened in 2004 with 120 employees. (Finding of Fact "F.F." No. 1.) The incident that precipitated the revocation occurred on February 1, 2017, when A.B. (Employee) took a group of children downstairs at 4:20 p.m. and returned upstairs one hour later leaving an apparently sleeping five-year-old autistic child (Child)

without staff supervision for forty-one minutes.[1] (F.F. No. 4.) During the transition, Employee also left a second child without supervision for one minute.[2] At 5:50 p.m., staff turned off the lights, locked the doors, and exited the building. There was no plan in place for ensuring that no children remained behind before leaving for the day. (F.F. No. 19.) When Child's mother (Mother) arrived at the Center for pick-up, the two on-site employees remaining (the Closers) did not have keys to open the door and a third one had to come and do so. At 6:02 p.m., Child was reunited with Mother. Consequently, for approximately one quarter of the time that Child was unattended, the Center was locked and dark. Even though Child was not physically injured, he appeared pale and frightened and "did not want the lights off in his home for a week after the incident." (F.F. No. 7.)

On February 2, 2017, the Center terminated Employee's employment. (F.F. No. 14.) In addition, following receipt of a February 2 complaint regarding the incident, a certification representative from the Department, Lauren Gard, conducted a February 3 complaint inspection. (F.F. No. 3.) As a result of that inspection, which included reviewing surveillance videotape, Gard prepared a February 8 inspection summary citing the Center with violating 55 Pa. Code § 3270.113(a)(1), the regulatory provision requiring children in a day care center to be supervised at all times. (F.F. No. 15.) Gard's summary also included corrective action for the Center, which it implemented. (F.F. Nos. 16 and 17.) Subsequently, the Department issued a letter therein advising the Center of the revocation decision. (F.F. No. 18.) In

---

[1] Severely autistic with an Individual Education Plan, Child "is close to being nonverbal in that he only repeats things that he hears and cannot engage in conversation, he does not know how to use the telephone, could not reach out for help if he needed it, and has trouble transitioning from Point A to Point B." (F.F. No. 6.)

[2] "Approximately three (3) years prior to February 1, 2017, the [Center] self-reported that they left a child alone for a short period of time." (F.F. No. 2.)

2

support, the Department cited the Center's (1) failure to comply with the Human Services Code (Code)[3] and departmental regulations; and (2) gross incompetence, negligence or misconduct in the operation of a child care program. (February 16, 2017, Letter at 1; Reproduced Record "R.R." at 21a.) The Center's request for a hearing followed.

At the June 2017 hearing before the Administrative Law Judge (ALJ), the Department presented three witnesses: Mother, Gard, and supervisor Brenda Lauren. Mother testified as to how Child's autism diagnosis manifests, his special needs, and how he behaved in the week following the incident. (F.F. No. 22.) "The picture [Mother] painted of [Child] was one of a helpless, frightened child who was not able to seek help in calling out to someone that he was still in the center or use a telephone due to limitations related to his autism." (Adjudication at 12.) Gard described the complaint inspection and Lauren testified as to how the Department arrived at its revocation decision. (F.F. Nos. 21 and 23.) The ALJ found the Department's three witnesses to be credible.

The Center presented the testimony of co-owner A.Z. (Owner) and called certification representative Jennifer Morgan as on cross. Owner testified as to her educational and professional background, admitted to the February 1 violation, and described the corrective action taken thereafter. (F.F. No. 25.) In addition, she described the Center's hiring practices pertinent to Employee.[4] Morgan

---

[3] Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101 - 1503.

[4] The Center hired Employee in August 2014. (F.F. No. 8.) Employee "met or exceeded experience and training requirements for her position . . . and received more than six (6) evaluations during her employment . . . ." (F.F. No. 13.) Even though the Center issued disciplinary warnings to Employee in 2015 for posting negative things on Facebook and in 2016 for using a company laptop to work on her resume, her record was complete regarding clearances, health records, and references. (F.F. Nos. 9, 10, and 12.) Nonetheless, her 2016 warning also

testified as to "her job duties and role in the inspection summary and visits with the [Center] *after* the February 1, 2017 incident." (F.F. No. 24) (emphasis in original). The ALJ found the testimony of the two witnesses to be credible.

In the adjudication, the ALJ recommended denial of the Center's appeal based on the severity of the violation and her conclusion that the "[C]enter's actions amounted to gross incompetence and misconduct in operation." (Adjudication at 12.) Subsequently, the Bureau of Hearings and Appeals (Bureau) adopted the recommendation in its entirety. The Center sought reconsideration, and it was granted. Ultimately, the Secretary of the Department issued a final order upholding the Bureau's decision. The Center's petition for review followed.[5] On appeal, we consider whether the undisputed facts support the Department's revocation of the Center's certificate of compliance.

The applicable law provides as follows:

> (b) The Department shall refuse to issue a license or shall revoke a license for *any* of the following reasons:
>
> (1) [v]iolation of or noncompliance with the provisions of this act or of regulations pursuant thereto.
>
> . . . .
>
> (4) [g]ross incompetence, negligence or misconduct in operating the facility.

Section 1026(b)(1) and (4) of the Code, 62 P.S. § 1026(b)(1) and (4) (emphasis added).

---

provided: "In general your job performance has been below expectations over the last few months. Please work towards meeting your job expectations as laid out in our staff handbook along with your desire to be part of our team." (F.F. No. 11.)

[5] In May 2018, this Court granted the Center's unopposed application for stay pending action on the petition for review.

4

Turning to the applicable regulatory authority, the purpose of the chapter governing child day care centers "is to provide standards to aid in protecting the health, safety and rights of children and to reduce risks to children in child day care centers." 55 Pa. Code § 3270.2. In addition, the chapter "identifies the *minimum* level of compliance necessary to obtain the Department's certificate of compliance." *Id.* (emphasis added). As for supervision, the applicable regulation, in relevant part, provides:

> (a) *Children on the facility premises* and on facility excursions off the premises *shall be supervised by a staff person at all times*. Outdoor play space used by the facility is considered part of the facility premises.

> (1) Each staff person shall be assigned the responsibility for supervision of specific children. *The staff person shall know the names and whereabouts of the children in his assigned group. The staff person shall be physically present with the children in his group on the facility premises* and on facility excursions off the facility premises.

55 Pa. Code § 3270.113(a)(1) (emphasis added).

On appeal, the Center cites *Gibbs v. Department of Public Welfare*, 947 A.2d 233 (Pa. Cmwlth. 2008), in support of its contention that the Department was required to conduct a more in depth investigation to prove that the Center was not in compliance with the law and engaged in gross incompetence, negligence or misconduct in operating its facility. Specifically, the Center maintains that the Department failed to consider and/or investigate whether Employee was a competent childcare professional and whether it was reasonable to leave Child in her custody. In addition, it maintains that the Department failed to consider the Center's thorough vetting of Employee before hiring her and the Center's actions in affording her

5

training and instruction. Finally, the Center notes that it immediately fired Employee after she failed to follow her training and instruction.

By way of background, *Gibbs* involved a family child day care home. The lapse in supervision occurred when Gibbs was watching children in her backyard with fences on two sides, instructed her adult son/employee to assume supervision, and entered the house for a private conversation with a parent. A two-year-old child left the yard, crossed the dead-end road, and approached a neighbor. Gibbs did not become aware of the child's departure until the neighbor telephoned her three minutes later. The Bureau affirmed the Department's decision to revoke Gibb's certificate based on a determination that she failed to properly supervise children and guard against them leaving her facility by not having a fully fenced-in yard. Further, determining that even a single regulatory violation was sufficient for revocation where the safety of a child was at stake, the Bureau concluded that permitting a child to leave the yard constituted gross incompetence, negligence or misconduct in operating a home day care center. *Id*. at 235.

On appeal, we reversed, concluding that Gibbs did not leave a child without supervision because she entrusted the children to an adult employee and there is no requirement that the owner personally supervise children at all times. In addition, we rejected the Department's contention that the lack of a fully fenced-in yard constituted a regulatory violation, noting that a fence is not a requirement for a family child day care home. Further, we rejected the Department's conclusion that Gibbs was guilty of gross incompetence, negligence or misconduct simply by permitting someone to assume supervision who failed to follow directions. To meet that standard, the Department would have had to establish that entrusting supervision to an adult for a short time itself satisfied that standard or that Gibbs knew her son

6

to be unreliable. In the absence of such evidence, the Department was holding Gibbs to a strict liability standard, which neither the Code nor the regulations provide. *Id.* at 238.

As the Department avers, *Gibbs* is distinguishable on both its facts and the applicable law. The child in *Gibbs* walked across a dead-end road in a rural area, with negligible traffic, and there is no indication that the child was at any increased risk due to a specific diagnosis such as severe autism. In addition, the child in *Gibbs* lacked supervision for three minutes whereas the lapse in the present case was for forty-one minutes. Significantly, Child's whereabouts in the instant case did not even become an issue until Mother came to retrieve him and encountered a locked and dark Center, in large part because of the admitted absence of a system to account for the departure of every child. We can infer that the Closers were surprised to see Mother.[6]

As for differences in the applicable law, a family child day care home is held to less restrictive legal standards than those that govern a child day care center. *See* 55 Pa. Code Chapter 3290 (family child day care home) and Chapter 3270 (child day care center). By way of background, the number of children in a family child day care home at any one time may not exceed six children unrelated to the operator and only one caregiver is required. 55 Pa. Code § 3290.51. In contrast, a child day care center can provide care for more than seven children unrelated to the operator.

Additionally, a child day care center is one of the legal entities that is required to designate an individual to be responsible for daily operations, 55 Pa.

---

[6] *See Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998) (appellate court must draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of the prevailing party).

7

Code § 20.13, whereas a family child day care home is not. Pertinent here, the designated individual need not have personal knowledge of a violation before revocation or non-renewal. *See, e.g.*, *Miller Home, Inc. v. Dep't of Pub. Welfare*, 556 A.2d 1, 4 (Pa. Cmwlth. 1989) (person legally responsible for daily operation of facility need not know of a staff person's violations before revocation of a personal care home license); *McFarland v. Dep't of Pub. Welfare*, 551 A.2d 364, 367 n.6 (Pa. Cmwlth. 1988) (failure to submit an acceptable plan to correct noncompliance items need not be willful to constitute proper ground for refusal to renew certificate of compliance for child day care center); *Aggie v. Dep't of Pub. Welfare*, (Pa. Cmwlth., 484 C.D. 2014, filed December 30, 2014), *appeal denied*, (Pa., 188 MAL 2015, July 21, 2015), slip op. at 11-12[7] (Department not required to prove that owner of a child day care center knowingly acquiesced to the violations levied against her).

In any event, the Department is authorized to revoke a certificate based on even a single violation of its regulations. *K.C. Equities d/b/a Little Steps Day Care v. Dep't of Pub. Welfare*, 95 A.3d 918, 930 (Pa. Cmwlth. 2014); *Altagracia De Pena Family Day Care Ctr. v. Dep't of Pub. Welfare*, 943 A.2d 353, 356 (Pa. Cmwlth. 2007); *Pine Haven Residential Care Home v. Dep't of Pub. Welfare*, 512 A.2d 59, 61 (Pa. Cmwlth. 1986). In addition, corrective action taken after a regulatory violation is irrelevant in determining whether to revoke a license. *Altagracia*, 943 A.2d at 356; *Colonial Gardens Nursing Home v. Dep't of Health*, 382 A.2d 1273, 1277 (Pa. Cmwlth. 1978). Further, the Department is authorized to revoke a license for *any* of the five reasons enumerated in Section 1026 of the Code. *Colonial Gardens*, 382 A.2d at 1275. In other words, any of the five reasons, standing alone, can constitute sufficient ground for revocation. *Id*.

---

[7] Section 414(a) of the Internal Operating Procedures of the Commonwealth Court provides that an unpublished case may be cited for its persuasive value.

8

In summary, Employee permitted two young children to be unsupervised, one with special needs; she went upstairs at which time children were out of her sight and hearing;[8] and she did not know the whereabouts of Child. In addition, staff did not count or physically go from room to room to ensure that no children remained before leaving for the day and no one remained in the locked facility with Child. (F.F. No. 19.) The ongoing lapse in supervision resulted in a vulnerable child remaining alone and in the dark for a significant time period such that the undisputed facts warrant revocation of the certificate of compliance as a matter of law.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[8] The Department's regulations define "supervise" as follows: "To be physically present with a group of children or with the facility person under supervision. Critical oversight in which the supervisor can see, hear, direct and assess the activity of the supervisee." 55 Pa. Code § 3270.4.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aa to Zz Childcare and Learning Center,  :
                    Petitioner  :
                                               :
                 v.  :          No. 651 C.D. 2018
                                               :

Department of Human Services,  :
                    Respondent  :

# **O R D E R**

AND NOW, this 1st day of May, 2019, the order of the Department of Human Services is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge