IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kidzoo Child Care Center
and Preschool,                       :

                Petitioner    :

                          :

        v.               :

                          :

Department of Human Services,    :   No. 985 C.D. 2021
                Respondent   :   Argued:  June 23, 2022


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED:  July 15, 2022


        Kidzoo Child Care Center and Preschool (Kidzoo) petitions this Court for review of the Department of Human Services (DHS), Bureau of Hearings and Appeals' (BHA) August 12, 2021 order denying Kidzoo's appeal from DHS' Office of Child Development and Early Learning's (Department) decision that revoked Kidzoo's certificate of compliance (Certificate/License) to operate a child care center.[1]  Kidzoo presents two issues for this Court's review:[2] (1) whether the Department failed to establish that Kidzoo acted with gross incompetence, negligence, or misconduct under Section 1026(b) of the Human Services Code (Code);[3] and (2) whether the Department erred by failing to issue Kidzoo a

---

[1] "A child day care license is referred to as a certificate of compliance." *Musheno v. Dep't of Pub. Welfare*, 829 A.2d 1228, 1229 (Pa. Cmwlth. 2003).

[2] This Court has changed the order of the issues for ease of discussion herein.

[3] Act of June 3, 1967, P.L. 31, *as amended*, 62 P.S. § 1026(b) (relating to license revocation).

provisional license under Section 1008(a) of the Code.[4]  After review, this Court reverses.

## Facts

Kidzoo is a child care center located at 800 Lombard Road, Red Lion, Pennsylvania.  On March 28, 2019, a Department representative (Representative) conducted an unannounced monitoring inspection at Kidzoo.  During that inspection, the Representative observed a violation of Section 3270.25(a) of DHS' Regulations.[5]  Specifically, Kidzoo's Certificate was not "posted in a conspicuous location used by parents."[6]  *Id*.  The Department notified Kidzoo of the regulatory violation and requested an acceptable plan of correction.  On April 5, 2019, the Department accepted Kidzoo's plan of correction.

On June 27, 2019, a Representative conducted another unannounced monitoring inspection at Kidzoo.  During that inspection, the Representative observed violations of Sections 3270.76 and 3270.102(e) of DHS' Regulations.[7]  Specifically, the Representative observed sharp, cracked plastic on the bottom border of the white plastic fence and mulch on the toddler outdoor play space.[8]  The

---

[4] 62 P.S. § 1008(a).

[5] 55 Pa. Code § 3270.25(a).

[6] Kidzoo's owner, Janis Grimm (Grimm), testified that she had taken the Certificate off the wall because she needed the identification number listed thereon to fill out paperwork relative to the Pennsylvania Standards Training/Professional Development, Assistants, Resources and Supports program.  *See* Notes of Testimony, Feb. 17, 2021 (N.T.) at Ex. C-7 (Kidzoo's Appeal Letter).

[7] 55 Pa. Code §§ 3270.76 ("Floors, walls, ceilings[,] and other surfaces, including the facility's outdoor play space surfaces shall be kept clean, in good repair and free from visible hazards."), and 3270.102(e) ("Pea gravel and other materials with a diameter of less than [one] inch may not be used in spaces where infants or toddlers receive care.").

[8] Grimm testified at the Administrative Law Judge (ALJ) hearing that the bottom of the fence became cracked when the lawn care service's weed wacker got too close to it, and she has since attached a wood piece to prevent further cracking.  *See* N.T. at 116, 118.  Regarding the mulch, Grimm related that the mulch travels to the play area after it rains.  *See id*. at 105.  The

2

Department notified Kidzoo of the regulatory violations and requested an acceptable plan of correction. On August 21, 2019, the Department accepted Kidzoo's plan of correction.

On July 1, 2019, a Representative conducted an allocated unannounced monitoring inspection at Kidzoo. During that inspection, the Representative observed violations of Sections 3270.31(e)(4)(iii) and (iv), 3270.32(a), 3270.151(a), 3270.181(c) and (e), and 3270.192(2)(ii), (3), (4), and (5) of DHS' Regulations.[9] Specifically, the lifeguard's certification had expired on June 1, 2019, only one non-family reference was in the lifeguard's file, and her Federal Bureau of Investigation background check request and clearance, and health assessment (other than her Tuberculosis test) were not in her file;[10] there was no documentation that the person who provided water safety training for the staff was a certified lifeguard; and four of the children's emergency contact information had not been updated in the last six months. The Department notified Kidzoo of the regulatory violations and requested

---

teachers make sure it is clean and free from debris before the children go out to play. *See id*. at 106.

[9] 55 Pa. Code §§ 3270.31(e)(4)(iii) ("Lifeguard training."), and (e)(4)(iv) ("Water safety instruction."); 3270.32(a) ("The operator shall comply with the [Child Protective Services Law (]CPSL[), 23 Pa.C.S. §§ 6301-6388.]"); 3270.151(a) ("A facility person providing direct care who comes into contact with the children . . . shall have a health assessment conducted within 12 months prior to providing initial service in a child care setting . . . ."); 3270.181(c) ("A parent is required to review and update the emergency contact information . . . at least once in a [six]-month period . . ."), and (e) ("If emergency information is updated in a master file, it shall be updated accordingly in other facility records."); and 3270.192(2)(ii) (A record shall include a copy of a "[v]erification of child care experience, education[,] and training prior to service at the facility[,]"), (3) ("[a] written report of initial and subsequent health assessments,") (4) ("[a] copy of requests for the criminal history record and child abuse registry clearance information,") and (5) ("[t]wo written, nonfamily references . . . .").

[10] Representative Leann Goodling testified at the ALJ hearing that the pool owner employed the lifeguard, but acknowledged it was Kidzoo's responsibility to have the paperwork on file. *See* N.T. at 64. The pool owner also keeps the documentation. *See id*. Grimm explained that, in this particular instance, Kidzoo's regular lifeguard was on vacation and the pool owner had informed Grimm that her replacement had all the proper certifications. *See* N.T. at 107-109.

an acceptable plan of correction. On August 9, 2019, the Department accepted Kidzoo's plan of correction.

On November 8, 2019, between 5:55 a.m. and 5:58 a.m., a 9-year-old child left Kidzoo and walked home. A Kidzoo staff person noticed the child was missing and searched for the child between 5:57 a.m. and 6:00 a.m. The child's whereabouts were unknown to Kidzoo staff for approximately 30 minutes. The child's mother called Kidzoo at approximately 6:30 a.m. to inform Kidzoo that the child had walked home, which was approximately two miles from the facility.[11]

From November 12 to November 27, 2019, a Representative conducted an investigation relative to the November 8, 2019 incident. During that investigation, the Representative verified that Kidzoo violated Section 3270.113(a) and (a)(1) of DHS' Regulations.[12] The Department notified Kidzoo of the regulatory violations and requested an acceptable plan of correction. On November 14, 2019, a Representative conducted an unannounced monitoring inspection at Kidzoo in connection with the November 8, 2019 incident. During that inspection, the Representative verified violations of Sections 3270.52 and 3270.124(f) of DHS' Regulations.[13] The Department notified Kidzoo of the regulatory violations and requested an acceptable plan of correction.

---

[11] Darrell Snyder (Snyder), a Kidzoo teacher, explained that the child admitted that after asking to use the restroom he waited until Snyder turned his back and went out the front door. *See* N.T. at 78-79.

[12] 55 Pa. Code § 3270.113(a) ("Children on the facility premises and on facility excursions off the premises shall be supervised by a staff person at all times. Outdoor play space used by the facility is considered part of the facility premises."), and (a)(1) ("Each staff person shall be assigned the responsibility for supervision of specific children. The staff person shall know the names and whereabouts of the children in his assigned group. The staff person shall be physically present with the children in his group on the facility premises . . . .").

[13] 55 Pa. Code §§ 3270.52 ("When children are grouped in mixed age levels, the age of the youngest child in the group determines the staff[.]"), and 3270.124(f) ("The parent shall update in writing emergency contact information once in a [six]-month period or as soon as there is a change in the information.").

On January 23, 2020, the Department revoked Kidzoo's License. Kidzoo appealed to the BHA and, following a hearing, an administrative law judge (ALJ) recommended the denial of Kidzoo's appeal. The ALJ concluded that the Department may revoke Kidzoo's License based on a single violation, Kidzoo did not dispute the violations, and Kidzoo was not entitled to a provisional license. On August 12, 2021, the BHA adopted the ALJ's recommendation and denied Kidzoo's appeal. Kidzoo appealed to this Court.[14] Kidzoo filed an application for stay pending appeal which this Court granted on October 20, 2021.[15] Accordingly, Kidzoo has remained open pending this Court's decision on the merits of Kidzoo's appeal.

## Discussion

Preliminarily, in its brief to this Court, Kidzoo argues, *inter alia*, that the closure of Kidzoo during the COVID-19 pandemic was contrary to the Department's stated objectives of providing safe child care facilities. DHS asserts that Kidzoo has waived this argument by not raising it in its Petition for Review (Petition) filed with this Court.

Pennsylvania Rule of Appellate Procedure 1513(d)(5) provides that an appellate jurisdiction petition for review shall contain "a general statement of the objections to the order or other determination, but the omission of an issue from the statement shall not be the basis for a finding of waiver **if the court is able to address the issue based on the certified record**[.]" Pa.R.A.P. 1513(d)(5) (emphasis added).

---

[14] "Our scope of review in an appeal of an adjudication of [DHS] is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact were supported by substantial evidence." *Lil Shining Stars, Inc. v. Dep't of Hum. Servs.*, 140 A.3d 83, 92 n.5 (Pa. Cmwlth. 2016).

[15] *See Kidzoo Child Care Ctr. & Preschool v. Dep't of Hum. Servs.* (Pa. Cmwlth. No. 985 C.D. 2021, filed Oct. 20, 2021).

Kidzoo contends that it raised the COVID-19 pandemic issue in Paragraph 5 of its Petition. However, a review of Petition paragraph five belies this assertion. Petition Paragraph 5 states:

> [The] BHA erred by applying a "Zero-Tolerance" Policy that does not match the Department's real-world actions. The Department has allowed Kidzoo to continue operating for two and a half years since the November 8, 2019 incident, without making any effort to seek an injunction or otherwise halt its services. Moreover, the Department erred as a matter of law by revoking Kidzoo's [C]ertificate . . . rather than placing Kidzoo on a provisional license. "When there has been substantial but not complete compliance with all the applicable statutes, ordinances and regulations and when the applicant has taken appropriate steps to correct deficiencies, **the [D]epartment shall issue a provisional license**." 62 P.S. [§] 1008(a) (emphasis added). "Upon full compliance by the facility, the [D]epartment shall issue a regular license immediately." 62 P.S. § 1008(d).

Petition ¶ 5. Similarly, this Court's review of the certified record reveals that there are no references to the issue of whether closing Kidzoo during the COVID-19 pandemic was contrary to the Department's stated objectives. Because Kidzoo did not raise the COVID-19 pandemic issue in its Petition, and this Court cannot address it based on the certified record, Kidzoo has waived that issue. *See* Pa.R.A.P. 1513(d)(5). Accordingly, this Court will not consider Kidzoo's argument relative to the COVID-19 pandemic issue.

**Gross Incompetence, Negligence, or Misconduct**

Kidzoo argues that the Department failed to establish that it acted with gross incompetence, negligence, or misconduct under Section 1026(b) of the Code. Kidzoo cites *Gibbs v. Department of Public Welfare*, 947 A.2d 233 (Pa. Cmwlth. 2008), to support its position. DHS rejoins that the facts herein more aptly align

6

with *Aa to Zz Childcare & Learning Center v. Department of Human Services* (Pa. Cmwlth. No. 651 C.D. 2018, filed May 1, 2019),[16] and, thus, *Aa to Zz* controls.

Initially, Section 1026(b) of the Code provides:

> [**DHS**] shall refuse to issue a license or **shall revoke a license for __any__ of the following reasons**:
>
> (1) **Violation of or non-compliance with the provisions of** [**the Code**] **or of** [**R**]**egulations** pursuant thereto;
>
> (2) Fraud or deceit in obtaining or attempting to obtain a license;
>
> (3) Lending, borrowing or using the license of another, or in any way knowingly aiding or abetting the improper granting of a license;
>
> (4) **Gross incompetence**, **negligence or misconduct in operating the facility**;
>
> (5) Mistreating or abusing individuals cared for in the facility.

62 P.S. § 1026(b) (bold and underline emphasis added).

In *Gibbs*, Gibbs held a certificate to operate a day care facility in her home that allowed her to care for her own children and up to six other children. In May 2006, the children were playing in the back yard under Gibbs' supervision. When Gibbs went in the house to have a private conversation with the parent of one of the day care children, she instructed her 20-year-old son who worked at the day care center to watch the children. Three minutes later, a two-year-old child left the yard and crossed the street to a neighbor's house. The neighbor called Gibbs. Until she received that phone call, Gibbs was not aware that the child had left the yard. The street that the child crossed is an untraveled, dead-end street located

---

[16] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

approximately one-quarter mile from a busier street. The Department revoked Gibbs' license based on Gibbs' violations of DHS' Regulations and Gibbs' gross incompetence, negligence, or misconduct in operating the facility. This Court determined that there were no DHS Regulation violations and, therefore, examined the above incident to determine whether Gibbs acted with gross incompetence, negligence, or misconduct.

The *Gibbs* Court held that, in order for Gibbs' actions to constitute gross incompetence, negligence, or misconduct, the Department had to produce evidence that entrusting supervision to an adult for a short time was itself grossly incompetent, negligent, or willful misconduct. The *Gibbs* Court reasoned that if Gibbs' son was known to be untrustworthy or unreliable, Gibbs' decision might have been negligent or incompetent. However, because there was no such evidence, the *Gibbs* Court ruled that Gibbs did not act with gross incompetence, negligence, or misconduct and reversed the license revocation.

In *Aa to Zz*, the incident that precipitated the revocation occurred when an employee of the day care center took a group of children downstairs at 4:20 p.m. and when they returned upstairs one hour later, the employee left an apparently sleeping 5-year-old autistic child (Child) behind without staff supervision for 41 minutes. During the transition, the employee also left a second child without supervision for one minute. At 5:50 p.m., staff members turned off the lights, locked the doors, and exited the building. The facility had no plan in place for ensuring that no children remained behind before leaving for the day. When Child's mother (Mother) arrived at the facility for pick-up, the two remaining on-site employees did not have keys to open the door, so a third employee had to return and unlock the door. At 6:02 p.m., Child was reunited with Mother. Consequently, for approximately one-quarter of the time that Child was unattended, the facility was locked and dark. The Department revoked the facility's license on the basis of its

8

failure to comply with the Code, DHS' Regulations, **and** gross incompetence, negligence, or misconduct in the operation of a child care program. The *Aa to Zz* Court determined that the severity of the incident warranted license revocation. In addition, the *Aa to Zz* Court held:

> In any event, the Department is authorized to revoke a certificate based on even a single violation of its regulations. . . . Further, the Department is authorized to revoke a license for *any* of the five reasons enumerated in Section 1026 of the Code. In other words, any of the five reasons, standing alone, can constitute sufficient ground[s] for revocation.

*Aa to Zz*, slip op. at 8 (citations omitted).

The *Gibbs* Court determined that there were no DHS Regulation violations therein. On that basis alone, *Gibbs* is inapposite. In *Aa to Zz*, the license was revoked for Code and DHS Regulation violations **in addition to** gross incompetence, negligence, or misconduct in operating the facility. Similarly, in the instant case, Kidzoo's License revocation was based on **both** DHS Regulation violations **and** gross incompetence, negligence, or misconduct in operating the facility. Accordingly, regardless of whether the Department established that Kidzoo acted with gross incompetence, negligence, or misconduct, the undisputed DHS Regulation violations are alone sufficient grounds to revoke Kidzoo's License. However, this conclusion does not end the Court's review of this matter.

**Provisional License**

Kidzoo also argues that the Department erred by failing to issue Kidzoo a provisional license under Section 1008(a) of the Code, instead of revoking its License. DHS rejoins that provisional licenses are only available for applicants, not license holders, and cites *KC Equities v. Department of Public Welfare*, 95 A.3d 918 (Pa. Cmwlth. 2014), to support its position. DHS further asserts that the term

9

"applicant" as used in Section 1008(a) of the Code also includes an applicant for license renewal, and Kidzoo was not in the process of renewal; therefore, Section 1008(a) of the Code does not apply to Kidzoo.

Initially, Section 1008(a) of the Code provides: "When there has been substantial but not complete compliance with all the applicable statutes, ordinances[,] and regulations[,] and when the applicant has taken appropriate steps to correct deficiencies, [DHS] **shall** issue a provisional license." 62 P.S. § 1008(a) (emphasis added). Similarly, Section 20.54(a) of DHS' Regulations declares: "A provisional certificate of compliance is issued if the facility . . . is in substantial, but not complete, compliance with applicable statutes, ordinances, and regulations." 55 Pa. Code § 20.54(a).

DHS' reliance on *KC Equities* for its position that Section 1008 of the Code applies only to applicants is misplaced. The issue in *KC Equities* was whether the BHA properly denied a child care facility's appeal from **a license revocation based on non-compliance with a settlement**. The *KC Equities* Court ruled that the provisional certificate became an option for the facility by virtue of its agreement to the settlement. Thus, the issue of whether Section 1008 of the Code applies to licensees was not before the Court. Accordingly, *KC Equities* is inapposite.

Notwithstanding, both before and after this Court's ruling in *KC Equities*, this Court has addressed whether a licensee was properly denied a provisional license without any discussion concerning whether Section 1008(a) of the Code applied. This Court expressly addressed whether a licensee showed correction of non-compliance items and compliance with plans of correction or substantial compliance. *See, e.g.*, *Lil Shining Stars, Inc. v. Dep't of Hum. Servs.*, 140 A.3d 83 (Pa. Cmwlth. 2016); *see also Liberty Manor Care Home v. Dep't of Pub. Welfare* (Pa. Cmwlth. No. 979 C.D. 2014, filed Apr. 17, 2015) ("[A] licensee may be issued a provisional license if the licensee is in substantial compliance with

10

the Code and [DHS' R]egulations[.]"), slip op. at 24; *Miller Home, Inc. v. Dep't of Pub. Welfare*, 556 A.2d 1 (Pa. Cmwlth. 1989).

In reviewing whether the Department should have issued the licensee (which was not applying for renewal) a provisional license, the *Lil Shining Stars* Court determined that "many of the violations found during the [specified] inspection were repeat violations and that the Department rejected [the p]etitioner's three proposed plans of correction." *Id*. at 97. The *Lil Shining Stars* Court held: "In such cases," i.e., where the licensee continues to repeat the same violations, and its plans for correction are continuously unacceptable to the Department, "this Court has found a lack of substantial compliance sufficient to warrant the issuance of a provisional license." *Id*.

Further, the *Miller Home* Court noted, "Miller had been given two provisional licenses. As emphasized, **any provisional license beyond the first is discretionary**. Additionally, a regular license shall be issued immediately '*upon full compliance*.' The record indicate[d] there was not full compliance by Miller." *Id*. at 3 n.12 (emphasis added). Notably, at least one of the *Miller Home* case facility's provisional licenses was granted when the facility was neither an original applicant nor an applicant for renewal.

Moreover, in *Liberty Manor Care Home*, this Court held:

> Although **a licensee may be issued a provisional license** if the licensee is in substantial compliance with the Code and [DHS' R]egulations, this Court has held that where there are repeat violations of the same statutory or regulatory provisions in multiple inspections, the licensee does not establish substantial compliance and is not entitled to a provisional license pursuant to Section 1008 of the Code and [Section 20.54(a) of DHS' Regulations,] 55 Pa. Code § 20.54(a).

11

*Liberty Manor Care Home*, slip op. at 24-25 (emphasis added). Thus, it is evident that Section 1008(a) of the Code applies to both applicants and licensees. The issue before this Court, therefore, is whether Kidzoo has shown "substantial compliance sufficient to warrant the issuance of a provisional license." *Lil Shining Stars*, 140 A.3d at 97.

Unlike the licensees in *Lil Shining Stars*, *Miller Home*, and *Liberty Manor Care Home*, Kidzoo was not cited for any repeat violations, and all violations have been corrected. *See* N.T. at 46, 54-55. Further, the Department has never issued Kidzoo a provisional license. *See* N.T. at 96. Moreover, with the exception of the November 8, 2020 incident, all of Kidzoo's violations were minor and reasonably explicable. "Certainly, [this Court] would not expect [Kidzoo] or any other entity in this particular industry to maintain 100% compliance at all times during their respective operations[.]"[17] *Lil Shining Stars*, 140 A.3d at 97.

Finally, the November 8, 2020 occurrence was an isolated incident involving a nine-year-old child who admitted that he tricked his teacher into believing that he was using the restroom, waited until the teacher turned his back, and snuck out the front door. *See* N.T. at 78. The child further revealed that he hid behind the bushes outside the facility for a time before heading to his home, in case anyone came looking for him. *See* N.T. at 78-79. This situation is distinct from both *Gibbs* and *Aa to Zz*, wherein a 2-year-old child wandered off the premises while being supervised, and a sleeping 5-year-old autistic child was left without staff

---

[17] In *Lil Shining Stars*, the petitioner asserted that DHS maintains over 400 Regulations and that no single proprietor could reasonably be expected to be in compliance with every regulation. However, the petitioner provided no authority to support how these assertions would justify a finding of substantial compliance. This Court noted: "[The p]etitioner opted to engage in an industry that is heavily regulated . . . but the fact remains that [the p]etitioner received notice of its violations, **many of which continued from a previous inspection**, and **its submitted plans of correction were rejected** by the Department on three separate occasions." *Lil Shining Stars*, 140 A.3d at 97 (emphasis added).

supervision for 41 minutes. In addition, Kidzoo self-reported the incident and the child returned to Kidzoo the very same day, which was clear evidence that the mother believed that it was her son's conduct, rather than gross incompetence, negligence, or misconduct on the part of Kidzoo, that caused the violation.[18]

Because Kidzoo has established "substantial . . . compliance with all the applicable statutes, ordinances[,] and [DHS' R]egulations[,] and [that it] ha[d] taken appropriate steps to correct deficiencies[,]" 62 P.S. § 1008(a), Kidzoo is entitled to a provisional license. Accordingly, the Department erred by revoking Kidzoo's License, and in refusing to issue Kidzoo a provisional license.

## Conclusion

For all of the above reasons, the BHA's order is reversed, and the matter is remanded to the BHA to remand to the Department to issue Kidzoo a provisional license.

_____
ANNE E. COVEY, Judge

---

[18] The child's mother testified on behalf of Kidzoo at the ALJ hearing. *See* N.T. at 86-94. The child's mother expressly stated: "I don't feel that they're [(Kidzoo)] at fault for this incident." N.T. at 93.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kidzoo Child Care Center
and Preschool,
          Petitioner

        v.

Department of Human Services,
          Respondent

:
:
:
:
:
:
:
:
:    No. 985 C.D. 2021
:

## O R D E R

AND NOW, this 15th day of July, 2022, the Department of Human Services (DHS), Bureau of Hearings and Appeals' (BHA) August 12, 2021 order is REVERSED, and the matter is REMANDED to the BHA to remand to the DHS Office of Child Development and Early Learning to issue Kidzoo Child Care Center and Preschool a provisional license.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge